IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSIE KELLY HODGE AS THE NEXT FRIEND, REPRESENTATIVE, AND MOTHER OF X.X.X., A MINOR, *Plaintiff,* | § § § § § | |
| V. | § § | CIVIL ACTION NO. 4:20-CV-2088 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND U.S. WELL SERVICES, LLC, *Defendants.* | § § § § | |

## MEMORANDUM AND RECOMMENDATION

This case is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). Plaintiff Jessie Kelly Hodge is suing on behalf of her minor daughter challenging the decision of The Guardian Life Insurance Company to pay the proceeds of life insurance policies held by the child's father, Joshua Batiste, to his mother, Donna Castillo. Defendants have filed a Motion for Judgment Under Rule 52 (ECF 51) and Plaintiff has filed a Motion for Summary Judgment (ECF 52). Having considered the parties' written submissions, the administrative record, and the law, the Court recommends that Defendants' Motion for Judgment Under Rule 52 be GRANTED, Plaintiff's Motion for Summary Judgement be DENIED, and this case be DISMISSED with prejudice.[1]

### I. Procedural Background

Plaintiff filed her Original Petition in a state court of Harris County, Texas asserting state law causes of action for negligence, breach of contract, and violations of the Texas Deceptive Trade Practices Act. ECF 1-4. Defendants removed the case to this federal court because

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 15.

Plaintiff's state law claims are preempted by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). ECF 1. After removal, the Court dismissed Plaintiff's state law claims and granted leave to amend. ECF 14, 16. Plaintiff's First Amended Complaint asserted claims for breach of contract under ERISA § 502(a)(1)(B) and breach of fiduciary duties under ERISA § 502(a)(2). ECF 17. Defendants filed a second Motion to Dismiss. With Plaintiff's agreement, the Court dismissed with prejudice all claims other than the breach of contract claim under § 502(a)(1)(B) for denial of benefits. ECF 30. The parties have now filed dispositive motions and the case is ready for resolution based on the administrative record.

## II. Standard of Review

### A. Rule 52

The parties agree that the Court should decide this case on the written submissions of the parties.[2] The Court concludes that the appropriate way to resolve this dispute is by making findings of fact and conclusions of law consistent with Rule 52 based on the administrative record and briefing. *See Ingerson v. Principal Life Ins. Co.*, Civil Action No. 2:18-cv-227-Z-BR, 2020 WL 3163074, *1 n.3 (N.D. Tex. May 13, 2020) (making recommended findings of fact and conclusions of law pursuant to Rule 52 where parties requested trial on the administrative record and briefing); *Batchelor v. Life Ins. Co. of N. Am.,* 504 F. Supp. 3d 607, 610 n.2 (S.D. Tex. 2020) ("Courts have noted that a trial on the papers under Rule 52(a) is effective in the ERISA context because courts may resolve factual disputes and issue legal findings without the parties resorting to cross motions for summary judgment."). The Rule 52 procedure is "equivalent to a bench trial on the record with the court acting as the finder of fact." *Bunner v. Dearborn Nat'l Life Ins. Co.*, No. CV H-18-1820, 2021 WL 2119488, at *13 (S.D. Tex. May 25, 2021).

---

[2] *See* ECF 27 at 7-8.

2

### B. De Novo Review of Administrative Record

In *Ariana M. v. Humana Health Plan of Tex., Inc.*, the Fifth Circuit reiterated Supreme Court precedent setting forth the standard of review for a challenge to an ERISA benefits decision:

> When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion. For plans that do not have valid delegation clauses, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard."

*Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Defendants correctly recite the law on ERISA standards of review but do not cite a Plan provision that validly delegates discretionary authority to the Plan Administrator and do not state expressly whether a de novo or abuse of discretion standard of review applies. ECF 51 at 12-13. Defendants primarily argue the benefits decision was legally correct, the ultimate issue under de novo review, and make only a cursory mention of the abuse of discretion standard of review. ECF 51 at 22-23.

Plaintiff initially stated the abuse of discretion standard applies in this case,[3] but later retracted that position, arguing that "[b]ecause Section 1701.062(a) of the Texas Insurance Code prohibits granting a plan administrator discretion in the administrator's decision to deny benefits under an ERISA plan, *de novo* review of the decision is required." ECF 52 at 2 (citing *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 257 (5th Cir. 2018)). Defendant does not challenge Plaintiff's argument for de novo review in its Reply. *See* ECF 61.

The parties appear to agree that a de novo standard of review applies and the Court will perform a de novo review of the benefits decision. Under a de novo standard of review, the Court must determine whether the administrator made a correct decision. *Pike v. Hartford life and Acc.*

---

[3] *See* ECF 52 at 7-8, citing the policy provision which provides: "Guardian is the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims."

*Ins. Co.*, 368 F. Supp.3d 1018, 1030 (E.D. Tex. 2019); *Ingerson v. Principal Life Ins. Co.*, Civil Action No. 2:18-cv-227-Z-BR, 2020 WL 3163074, *8 (N.D. Tex. May 13, 2020). The Plaintiff bears the burden to show by a preponderance of the evidence that she is entitled to benefits. *Id.*; *see also Lebron v. Boeing Co.*, No. CV H-18-3935, 2020 WL 444428, at *2 (S.D. Tex. Jan. 13, 2020) (under de novo review the court independently weighs the administrative record to determine whether the claimant has shown an entitlement to benefits), report and recommendation adopted sub nom. *Lebron v. Boeing Co. Emp. Health & Welfare Plan*, No. 4:18-CV-3935, 2020 WL 430964 (S.D. Tex. Jan. 28, 2020), aff'd sub nom. *Lebron v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, No. 20-20165, 2021 WL 1396574 (5th Cir. Apr. 13, 2021).

**III.      Findings of Fact Based on De Novo Review of Administrative Record**[4]

For purposes of this Recommendation, the Court finds the following facts are established by the Administrative Record.[5]

1.   Joshua W. Batiste was hired by U.S. Well in September 2017 and enrolled in the U.S. Well employee welfare benefit plan ("Plan"). ECF 50-1.

2.   U.S. Well is the Plan Sponsor and Plan Administrator and the Policyholder under Guardian Group Policy No. G-00500311 (Policy). *Id.*; AR 2. Guardian is the Claims Administrator. ECF 50-1; AR 133, 135.

3.   As a Plan participant, Batiste was covered by the Policy for up to $63,000 basic life insurance benefits, up to $63,000 basic AD&D insurance benefits, and $500,000 voluntary AD&D insurance benefits. ECF 50-1; AR 480, 484, 730.

4.   U.S. Well used a system called the "PayCom system" to allow participants to sign

---

[4] To the extent any finding of fact is deemed to be a conclusion of law, or vice versa, the one is adopted as the other.
[5] Defendants filed the Administrative Record (AR) as Exhibit A to their Rule 52 Motion. ECF 50-1 - 50-4. Page citations to the AR are to the "Guardian/Hodge" Bates number appearing in the lower right corner.

4

up for and review Plan benefits electronically. AR 707.

5. Batiste initially elected optional life insurance coverage of $150,000. AR 486, 657. The Plan required Batiste to submit an Evidence of Insurability (EOI) Form before optional life insurance coverage would take effect. AR 13 ("Proof of insurability requirements apply to the optional term life insurance. . . . the employee must submit to us proof that he or she is insurable, and we must approve that proof in writing before the insurance . . . becomes effective."); AR 72 ("Any part of an employee's coverage which is subject to proof that he or she is insurable won't start unless he or she sends this proof to us, and we approve it in writing.").

6. U.S. Well withheld from Batiste's paycheck a premium payment in the amount of $62.70 for optional life insurance coverage. AR 486, 707.

7. The record does not include any evidence showing Batiste submitted an EOI form or that Guardian approved optional life insurance coverage in writing. *See* AR 482, 486, 657-58, 685, 730.

8. The Plan states that with respect to basic life insurance benefits: "You decide who gets this insurance if you die. You should have named your beneficiary on your enrollment form. You can change your beneficiary at any time by giving your employer written notice . . . [b]ut the change won't take effect until your employer gives you written confirmation of the change." AR 48, 287.

9. The Plan states that with respect to basic AD&D benefits, Guardian will "pay the beneficiary of the employee's basic group term life insurance." AR 66, 308.

10. The Plan states that with respect to voluntary AD&D benefits: "The employee decides who gets this insurance if he or she dies. He or she should have named a beneficiary on his or her enrollment form. The employee can change his or her beneficiary at any time by giving

us notice . . . [b]ut the change won't take effect until we give you confirmation of the change." AR 67-68, 310.

11. The Plan states that with respect to basic life benefits and basic AD&D benefits: "If there is no beneficiary when an employee dies, we'll pay this insurance to one of the following: (a) his estate; (b) his spouse; (c) his parents; (d) his children; or (e) his brothers and sisters." AR 48, 66, 287.

12. The Plan states that with respect to voluntary AD&D benefits: "If there is no beneficiary when the employee dies, we'll pay the insurance to one of the following: (a) his or her estate; (b) his or her spouse; (c) his or her parents; (d) his or her children; or (e) his or her brothers and sisters." AR 68, 310.

13. No hardcopy "beneficiary designation form" signed by Batiste appears in the record. No terms in the Plan require Guardian to pay benefits only to the beneficiary designated on a signed, hardcopy "beneficiary designation form."

14. The Plan requires that claimants "must file a request for review of a denied claim within 60 days after receipt of written notification of denial of a claim" and forms and instructions for filing claims may be obtained from the Plan Administrator. AR 384.

15. Batiste died on May 13, 2018 as the result of a non-work-related accident. AR 614, 695.

16. Guardian received notice of Batiste's death on May 21, 2018. AR 477, 542.

17. On June 4, 2018 and again on June 6, 2018 Guardian requested the following information from U.S. Well in order to evaluate the claim file on Batiste:

- A finalized/certified death certificate (seal or original is not needed).
- Enclosed GG42 group life claim form fully completed by the employer and beneficiary/claimant.
- Mr. Batiste's most recent beneficiary designation form.

- Our system is showing Mr. Batiste's coverage to be terminated as of 5/12/2018, prior to his date of passing on 5/13/2018. Was the intention to keep Mr. Batiste covered through his date of passing?

AR 529-31.

18. U.S. Well's benefits coordinator, Susan Creed, provided Guardian with a computer screenshot showing that Donna Castillo was the designated beneficiary of Batiste's insurance coverage in accordance with the Plan. AR 482, 545, 710-11, 725.

19. On June 13, 2018, Guardian received a Group Life Claim Form signed by Donna Castillo seeking basic and voluntary life insurance benefits and basic and voluntary AD&D benefits in her capacity as Batiste's designated beneficiary. AR 508-10, 675-76, 685.

20. On June 20, 2018, Guardian informed Castillo that it approved her claim for basic life insurance benefits of $63,020.71 and it subsequently sent her a check in that amount. AR 492-93, 620.

21. On July 19, 2018, Guardian informed Castillo that it approved her claim for basic and voluntary AD&D benefits in the combined amount of $563,000 and it subsequently mailed her a check in that amount. AR 500-01.

22. A Child Support Review Order entered January 5, 2018 in state district court in Burelson County, Texas establishes that Batiste was the biological father of Plaintiff's minor daughter. AR 565-586.

23. Shortly after Batiste's death, Plaintiff, on behalf of her daughter, filed a lawsuit in state court against Unique Limo Service, LLC and others allegedly involved in Batiste's death. AR 615. On October 17, 2018, after U.S. Well did not produce a beneficiary designation form in response to a subpoena issued in the Unique Limo lawsuit, counsel for Plaintiff wrote to Guardian to see if it would voluntarily produce "the written life insurance beneficiary forms/card signed by

7

Mr. Batiste prior to his death." *Id*.

24. On December 12, 2019, counsel for Plaintiff wrote a letter to Guardian stating that Plaintiff's daughter was "the sole surviving heir and statutory beneficiary" of Batiste and was entitled to receive Batiste's insurance benefits. AR 563-64.

25. On March 13, 2020, Guardian informed Plaintiff that under the Plan an insured decides who is the beneficiary. Guardian further stated that Batiste designated Castillo as his beneficiary and therefore pursuant to the Plan it had properly paid Castillo all sums that were payable for Batiste's insurance coverage. AR 505.

26. On April 2, 2020, Plaintiff requested Guardian produce all beneficiary designations signed by Batiste for life insurance coverage under the Plan. AR 550-51.

27. On April 14, 2020, Guardian emailed to counsel for Plaintiff the screenshot showing Castillo as Batiste's beneficiary. AR 544-45.

28. Plaintiff did not file a claim form for benefits under the Plan or request review of Guardian's March 13, 2020 letter stating benefits were payable to Donna Castillo as Batiste's designated beneficiary.

29. Plaintiff filed this lawsuit suit on May 13, 2020. Plaintiff's operative pleading asserts one cause of action under § 502(a)(1)(B) for denial of benefits. ECF 30.

### IV. Conclusions of Law

#### A. Guardian's Benefits Decision Was Legally Correct

1. The Court reviews the benefits decision at issue in this case de novo to determine if it was legally correct. *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018); *Pike v. Hartford life and Acc. Ins. Co.*, 368 F. Supp.3d 1018, 1030 (E.D. Tex. 2019).

2. The Court's de novo review requires it to "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met [her] burden" to show she is entitled to benefits. *Batchelor v. Life Ins. Co. of N. Am.*, 504 F. Supp. 3d 607, 609 (S.D. Tex. 2020); *Gray v. Minnesota Life Ins. Co.*, No. CV H-19-4672, 2021 WL 861298, at *2 (S.D. Tex. Mar. 8, 2021). Plaintiff's burden is to show by a preponderance of the evidence that her daughter is the beneficiary who is legally entitled to receive Batiste's insurance benefits. *See Gray*, 2021 WL 861298, at *2 (the standard for de novo review requires the plaintiff to show the claim for benefits is supported by a preponderance of the evidence).

3. Under a de novo review, the Court gives no deference or presumption of correctness to the benefits decision. *Id.*

4. Defendants argue that the benefits decision is legally correct under the factors set forth in *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir. 1990): "(1) whether the administrator has given the Plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the Plan, and (3) any unanticipated costs resulting from different interpretations of the Plan." In *Wildbur*, the Fifth Circuit established these three factors for determining whether a decision was legally correct as step one of a two-step process for an abuse of discretion review. *Id.* It is unclear if the *Wildbur* factors are applicable to a de novo review in the wake of *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018). *See Batchelor v. Life Ins. Co. of N. Am.*, 504 F. Supp. 3d 607, 609 (S.D. Tex. 2020) (stating that the Fifth Circuit has not set forth specific guidelines governing a de novo review); *Woodlands Outpatient Surgical Ctr. v. Am. Bureau of Shipping, Inc. Emp. Benefit Plan*, No. CV H-17-1476, 2020 WL 6365533, at *2 (S.D. Tex. Aug. 20, 2020), report and recommendation adopted sub nom. *Woodlands Outpatient Surgical Ctr. v. Am. Bureau of Shipping, Inc*, No. 4:17-CV-1476, 2020 WL

6373269 (S.D. Tex. Sept. 29, 2020) (recognizing that the standard for determining whether a benefits determination was legally correct "is not particularly clear following the Fifth Circuit's decision in *Ariana*" but it "remain[s] clear that it is for the Court to review to review the underlying record.").[6]

5.      Plaintiff does not contend that *Wildbur* governs the Court's review and does not address the consistency and cost factors of the *Wildbur* test for determining legal correctness.  *See* ECF 52; 59.  Plaintiff argues that Guardian's benefits decision is not based on a fair reading of the Plan.  ECF 59 at 8.  For the reasons set forth below, the Court concludes that Guardian's benefits decision is consistent with a fair reading of the Plan and was legally correct.

6.      Plaintiff's argument—that the screenshot identifying Batiste's mother as his designated beneficiary is not a valid beneficiary designation, and therefore Guardian is obligated to pay the benefits in accordance with Texas law of intestate succession (ECF 59 at 8)—contravenes the express terms of the Plan and applicable law.

7.      Plaintiff's argument that the screenshot does not evidence a beneficiary designation lacks merit.  Plaintiff has presented no admissible evidence demonstrating the screenshot is unreliable or false.[7]   In *Harmon v. Harmon*, 962 F. Supp. 2d 873, 887 (S.D. Tex. 2013), the district court applying an abuse of discretion standard held that while a computer screenshot may not be the most reliable evidence, it constituted "substantial" evidence to support an award of benefits to

---

[6] *But see Gilmour Tr. for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc*., No. SA-17-CV-00510-FB, 2020 WL 3184365, at *10 (W.D. Tex. June 12, 2020) (declining to determine whether an abuse of discretion or a de novo review was proper and applying the *Wildbur* factors to determine whether the benefits decision was legally correct).

[7] The Court in a separate Order has granted Defendants' Motion to Strike the expert report of Jaime MacInnis. Plaintiff hired MacInnis to determine whether the administrative record and information produced by Paycom "contained any protocol conforming login by Joshua to Paycom's web portal whereby Joshua designated Castillo as beneficiary of the Policies as required by Paycom's employee secured login and verification protocol." ECF 42 at 4. MacInnis provided a report stating that "no conforming protocol login or beneficiary designation" was included in the information he reviewed.  Even if admissible, MacInnis's opinion does not provide evidence that the beneficiary designation in the screenshot was false or that Batiste designated his daughter as his beneficiary.

10

the beneficiary identified as the designated beneficiary in the screenshot.

8. Unlike *Harmon*, this Court is conducting de novo review of the benefits decision. Therefore, this Court must determine whether the preponderance of evidence in the record as a whole supports a finding that Plaintiff's daughter was Batiste's proper beneficiary under the Plan. *See Gray*, 2021 WL 861298, at *2. As was the case in *Harmon*, this Court finds the screenshot constitutes evidence of Batiste's designation of beneficiary. In this case, the screenshot is the only evidence in the record of a beneficiary designation. Therefore, the record as a whole supports the decision to award benefits to Batiste's mother.

9. The preponderance of evidence in the record does not support a finding that the benefits should have been paid to Plaintiff's daughter. The Plan authorized Guardian to pay benefits to Batiste's mother. AR 48 ("If there is no beneficiary when an employee dies, we'll pay this insurance to one of the following: (a) his estate; (b) his spouse; (c) his parents; (d) his children; or (e) his brothers and sisters."); *see also* AR 66, 68, 287, 310. Nothing in the Plan authorizes payment of benefits pursuant to state intestate inheritance laws. Guardian is required to pay benefits in accordance with the express terms of the Plan. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (plan administrator is obliged to act in accordance with the documents and instruments governing the plan when disbursing benefits); *Manning v. Hayes*, 212 F.3d 866, 870 (5th Cir. 2000) (claim for benefits relying on Texas beneficiary redesignation statute is preempted by ERISA), *overruled on other grounds by Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009). Thus, the decision to pay benefits to Batiste's parent, Donna Castillo, was legally correct.

10. Texas Estates Code § 201.001(b), which establishes a child's right to intestate inheritance, does not demonstrate that despite the provisions of the Plan Plaintiff's daughter is

entitled to benefits. *See Unum Life Ins. Co. of Am. v. Rankin*, No. 1:15-CV-00156-BL, 2016 WL 8116772, at *2 (N.D. Tex. Nov. 16, 2016), report and recommendation adopted, No. 1:15-CV-156-C, 2017 WL 384345 (N.D. Tex. Jan. 25, 2017) (rejecting plaintiff's argument that Texas Family Code § 9.301 overrides plan documents). Even outside the context of an ERISA plan, Texas statutory rules of intestate distribution do not apply to the payment of insurance benefits. *Valdez v. Ramirez*, 574 S.W.2d 748, 750 (Tex. 1978); *Colonial Life & Acc. Ins. Co. v. Wade*, Civil Action No. H-18-1631, 2019 WL 27116503, at *2 (S.D. Tex. June 28, 2019) (Non-testamentary assets such as proceeds of an insurance policy "are not subject to disposition by will and are not subject to the rules of intestate succession.").

11. Plaintiff argues that Guardian's decision was procedurally unreasonable because Guardian did not investigate the accuracy of the beneficiary designation reflected in the screenshot. ECF 52 at 10-11. Procedural unreasonableness is merely a factor to be considered by a court in determining whether a plan administrator with a conflict of interest abused its discretion in making its benefits decision. *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 510 (5th Cir. 2013). Fifth Circuit precedent does not impose on an ERISA plan administrator the duty to investigate the source of evidence. *Id.* at 511; *Gomex v. Ericsson, Inc.*, No. 2L13-cv-372m 2015 WL 12910637, at *13 (E.D. Tex. 2015).

12. Because the benefits were paid in accordance with the terms of the Plan and Plaintiff cannot show that Guardian's decision to pay benefits to Castillo was legally incorrect, Defendants are entitled to judgment as a matter of law.

### B. Plaintiff Cannot Assert an ERISA Estoppel Claim

13. The elements of a claim for ERISA estoppel are (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary

circumstances. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005). The Court reviews the administrative record de novo when ruling on an ERISA estoppel claim. *Id*

14. Plaintiff has not plead an ERISA estoppel claim (s*ee* ECF 17), but requests in her Motion for Summary Judgment leave to amend her complaint to include a claim for ERISA estoppel. ECF 52 at 4-5 n.2. Plaintiff makes no effort to meet the good cause standards of Federal Rule of Civil Procedure 16(b) for granting leave to amend after expiration of scheduling order deadlines. *See McMinn v. D. Houston, Inc.*, No. CV H-20-1246, 2021 WL 2188239, at *2 (S.D. Tex. May 28, 2021) (to determine whether there is good cause to amend under Rule 16(b) a court considers (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice from allowing the amendment; and (4) the availability of a continuance to cure prejudice.). Therefore, Plaintiff has not provided good cause for granting leave to amend after the deadline in the scheduling order and after Defendant has moved for summary judgment.

15. Plaintiff seeks leave to amend to add a claim for ERISA estoppel based on U.S. Well's alleged failure to provide Batiste with an EOI form and the deduction of premiums for the optional coverage from his pay. Plaintiff has failed to present evidence to support any of the three elements of her proposed ERISA estoppel claim. Thus, Plaintiff's request to amend also should be denied because amendment would be futile.

16. As to the first element, a failure to disclose information, particularly without intent to deceive, is not "a material misrepresentation" giving rise to an ERISA estoppel claim. *Khan v. American Intern. Group, Inc.*, 654 F. Supp. 2d 617, 629 (S.D. Tex. 2009) (citing *Burstein v. Ret. Account Plan for Emps. Of Allegheny Health Educ. and Res. Found.*, 334 F.3d 365, 383 (3rd Cir. 2003).

17. The administrative record does not support a finding that U.S. Well failed to provide the necessary EOI form to Batiste and supports only a finding that no EOI form was received and approved by Guardian. In addition, Plaintiff has no evidence that U.S. Well withheld the form with any intent to deceive.

18. Even assuming U.S. Well made one or more "material misrepresentations" to Batiste through either failure to provide the EOI form or deduction of premiums, Plaintiff's ERISA estoppel claim fails for lack of evidence as to the second element—reasonable reliance to his detriment on any misrepresentation by U.S. Well. ERISA's policy precluding informal modification of plan terms precludes any finding that Batiste reasonably relied on any informal communications from U.S. Well. *Mello*, 431 F.3d at 445-46.

19. Plaintiff's proposed claim seeks to recover benefits under optional life insurance coverage that never became effective. The express terms of the Plan require an approved EOI form before optional life insurance coverage could take effect. *See* AR 13, 72. Batiste could not reasonably rely on any material misrepresentations regarding provision of an EOI form as a basis for optional life insurance coverage because the unambiguous terms of the plan refute this claim for coverage. *High v. E-Sys. Inc.*, 459 F.3d 573, 580 (5th Cir. 2006); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 375 (5th Cir. 2008).

20. Similarly, Batiste could not reasonably rely on U.S. Well's withholding of premiums because payment of premiums cannot create coverage where none exists under the terms of the Plan. *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 344 (5th Cir. 2007) (widow of employee who "timely paid the basic and supplemental life insurance premiums while on disability leave until his death" not entitled to benefits), *overruled on other grounds by Gearlds v. Entergy Services, Inc.*, 709 F.3d 448, 452 (5th Cir.2013); *Sanborn-Alder v. Cigna Grp. Ins.*, 771 F. Supp.

2d 713, 728 (S.D. Tex. 2011) ("payment of premiums [did not] create coverage under the plan where coverage did not exist under the terms of the plan or the policy"); *Khan v. Am. Int'l Grp., Inc.*, 654 F. Supp. 2d 617, 630 (S.D. Tex. 2009) ("In numerous cases, courts have upheld the denial of benefits under a policy despite the defendants' acceptance of premiums for that policy." (citations omitted)).

21. Plaintiff's argument that with "the birth and parental responsibility for his only child, Batiste reasonably and detrimentally relied on the Optional Life policy coverage" (ECF 59 at 12) is not supported by any evidence in the record. The record indicates that Batiste began employment with U.S. Well in September 2017 but had not acknowledged paternity of his daughter prior to January 2018.

22. Plaintiff also has no evidence of the third element of an ERISA estoppel claim—extraordinary circumstances. Examples of extraordinary circumstances that may support an ERISA estoppel claim include "(1) acts of bad faith; (2) attempts to actively conceal a significant change in the plan; (3) the commission of fraud; (4) circumstances where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled; or (5) an especially vulnerable plaintiff." *Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 625-26 (W.D. Tex. 2013). Mistakes or oversights by an employer do not constitute extraordinary circumstances. *Khan*, 654 F. Supp. 2d at 629; *Nicholas v. KBR, Inc.*, No. CV H-07-0657, 2010 WL 11531123, at *16 (S.D. Tex. Aug. 24, 2010). Plaintiff does not present extraordinary circumstances in her Rule 52 Response or her Motion for Summary Judgment. *See* ECF 52, 59. Thus, Plaintiff has not shown the existence of any extraordinary circumstances that would support a successful ERISA estoppel claim.

### C. Exhaustion of Administrative Remedies

23. Claimants seeking ERISA benefits must exhaust all administrative remedies under the Plan before filing suit in federal court. *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256 (5th Cir. 2005); *Brown v. Star Enter.*, 881 F. Supp. 257, 259 (E.D. Tex. 1995) ("It is well-settled that plaintiffs asserting an ERISA cause of action must exhaust their administrative remedies provided by their benefits plan before bringing action in federal court." (citations omitted)). "A plaintiff may not make an initial claim for benefits in a lawsuit." *Brown*, 881 F. Supp. at 259.

24. Defendants argue in the alternative that Plaintiff's claim should be dismissed because she failed to exhaust her administrative remedies. ERISA exhaustion is an affirmative defense, not a jurisdictional requirement. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308–09 (5th Cir. 2008); *Marrero v. Willbros Grp., Inc.*, No. 4:13-CV-0243, 2013 WL 5440595, at *6 (S.D. Tex. Sept. 25, 2013) ("Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense.").

25. The Court need not address Defendant's alternative lack of exhaustion argument because Defendants are entitled to judgment as a result of Plaintiff's failure to meet her burden to show that her daughter is entitled to benefits under the Plan.

### V. Conclusion and Recommendation

Based on the Court's findings and conclusions made after a de novo review of the Administrative Record, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF 52) be DENIED; Defendants' Motion for Judgment Under Rule 52 (ECF51) be GRANTED; and this case be DISMISSED with prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28

U.S.C. § 636(b)(1)(c).    Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on September 09, 2021, at Houston, Texas.

*[signature: Christine A. Bryan]*
Christina A. Bryan
United States Magistrate Judge